## WILSON & CO., Inc., v. NATIONAL LABOR RELATIONS BOARD.

### No. 469.

Circuit Court of Appeals, Eighth Circuit.

Dec. 2, 1940.

James D. Cooney, of Chicago, Ill. (Marshal Wiedel and L. R. Simpson, both of Chicago, Ill., on the brief), for petitioner.

Edward F. Prichard, Jr., Sp. Asst. to the Atty. Gen. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Bertram Edises, and David B. McCalmont, Jr., all of Washington, D. C., on the brief), for National Labor Relations Board.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The petitioner, Wilson & Co., Inc., asserts that an order of the National Labor Relations Board, requiring collective bargaining with United Packing House Workers, Local Industrial Union No. 51, through Packinghouse Workers Organizing Committee (hereinafter called the union), as the exclusive representative of the production and maintenance employees of petitioner at its plant in Cedar Rapids, Iowa, is invalid and should be set aside. Respondent asserts that the order is a valid order, and requests its enforcement.

Petitioner is a meat packer engaged in interstate and foreign commerce. It has various plants throughout the United States, one of which is located at Cedar Rapids, Iowa. The production and maintenance employees at that plant constitute an appropriate unit for collective bargaining. In 1933, some of these employees formed the union above referred to, which, at its inception, was affiliated with the A. F. of L. It later became an independent union, but since May 22, 1937, has been affiliated with the C. I. O. Since 1935 the union has represented a substantial majority of the employees at the plant. The petitioner has negotiated with the union since its formation relative to hours, wages, and working conditions at the plant. At no time has petitioner accorded formal written recognition to the union as the exclusive bargaining representative for all of petitioner's employees at the plant, and petitioner has not entered into any written agreement with the union.

In 1938, the business agent of the union filed with the National Labor Relations Board charges that the petitioner had engaged in unfair labor practices under § 8(1) and § 8(5) of the National Labor Relations Act, 29 U.S.C. § 158(1) and § 158(5), 29 U.S.C.A. § 158(1 and 5). The actual basis for the charges was the claim that petitioner had refused to bargain in good faith with the union as the exclusive representative of all of the employees at petitioner's Cedar Rapids plant. The complaint issued by the Board charged that petitioner "has refused to bargain with the union as the exclusive representative of all the employees in said unit for the purposes of collective bargaining"; that it "failed to bargain in good faith with the union, and did refuse and does now refuse to enter into an agreement with the union"; that the union presented a contract to the petitioner on three separate occasions in 1937 and 1938, and that petitioner stated to the union that it "would not enter into or sign any agreement with the union." A hearing upon these charges was had at Cedar Rapids, Iowa, before a trial examiner. The sole issue tried was whether the course of petitioner's dealing with the union constituted a violation of § 8(5) of the Act.

Section 158(5), Tit. 29, U.S.C., 29 U.S.C.A. § 158—§ 8(5) of the Act—makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title". Section 159(a) provides: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

At the hearing before the trial examiner, the Board introduced documentary evidence and the testimony of three witnesses. The position of the Board is shown by the following statement of its counsel, made at the close of the evidence: "I should like to say that we have at the beginning limited the issue in this case to whether here there has been a violation of section 8, subsection 5, of the Act. I think it is clear on the record that within that limitation there are two specific legal issues presented; first, whether or not it is collective bargaining for a company, an employer, through its agents, to meet representatives of the employees, talk with them at great length, and simply on various occasions and from time to time to announce company policies which may or may not be in accord with the suggestions made by the employees' representatives; the issue of whether or not collective bargaining does not require more than that, as one witness suggested it, a flexibility of mind on both sides of the table and a willingness to come to a real agreement; and the second legal issue, whether or not collective bargaining does not necessarily imply, or let us say good

faith in collective bargaining does not necessarily imply at least in those cases where there is any complexity to the issues that any agreement that may be reached be reduced to the form of a written agreement in order to avoid that which collective bargaining is designed to avoid, the strife that results from uncertainty, ambiguity or lack of understanding."

The gist of the petitioner's position was stated by its counsel, quoting from the opinion in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 628, 81 L.Ed. 893, 108 A.L.R. 1352, as follows: "The act does not compel agreements between employers and employees. It does not compel any agreement whatever. It does not prevent the employer 'from refusing to make a collective contract and hiring individuals on whatever terms' the employer 'may by unilateral action determine.' The act expressly provides in section 9(a) that any individual employee or a group of employees shall have the right at any time to present grievances to their employer. The theory of the act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the act in itself does not attempt to compel."

In January, 1940, the Board issued its findings of fact and decision, and entered an order requiring the petitioner to cease and desist from "refusing to bargain collectively with United Packing House Workers, Local Industrial Union No. 51, through Packinghouse Workers Organizing Committee, affiliated with the C. I. O., as the exclusive representative of the production and maintenance employees at its Cedar Rapids, Iowa, plant." The order also required the petitioner to take appropriate affirmative action to effectuate the policy of the act.

The order of the Board was based upon its findings: (1) that petitioner had refused to recognize the union as the exclusive representative of petitioner's employees at the Cedar Rapids plant for purposes of collective bargaining; (2) that it had failed to submit counter offers to the union at the time it rejected the union's proposals; (3) that it had changed work schedules and wage scales without consultation with or notification to the union; (4) that it had refused to reduce its agreements with the union to writing; and (5) that, by dilatory tactics, it had avoided entering into a binding agreement, and had thus made a sham of collective bargaining.

The question which it is necessary for us to determine is whether, under the evidence adduced, it was permissible for the Board to find that the petitioner had failed to comply with the act with respect to recognizing and bargaining with the union as the exclusive representative of all of petitioner's employees at its Cedar Rapids plant. If the evidence, considered in the aspect most favorable to the Board's determination, is sufficient to support it, then it cannot be set aside by this court, regardless of how impressive and convincing the arguments of petitioner that the Board's determination is erroneous may be.

A detailed discussion of the evidence is not necessary. Our examination of the record convinces us that there was evidence from which the Board might find that, although negotiations between the union and the petitioner had been carried on relative to wages, hours, and working conditions, and although the union and the petitioner had reached an accord as to many of such matters, the petitioner had at all times failed and refused to reduce these agreements to writing, and had frequently announced that it was against its policy to enter into any written agreement with the union as the representative of petitioner's employees at the plant. There was evidence from which the Board might determine that the petitioner had not fully and formally accorded recognition to the union as the exclusive bargaining agent of all of petitioner's employees at the plant, and that communications sent to its employees, while stating that petitioner had negotiated with the union, created the impression that the union was not regarded by the petitioner as the sole and exclusive representative of all employees, and that any of them might deal with the management with respect to any matters that they cared to take up. There was also evidence tending to show that on three separate occasions the union had submitted to petitioner proposed forms of contract embodying the union's demands on behalf of the employees at the plant, with requests that these proposed forms be used as a basis for further negotiations in attempting to reach a binding written contract between petitioner and

the union, but that petitioner had made no counter proposals, apparently in adherence to its announced policy of refusing to make a written agreement with the union. There was also evidence that, on occasions, work schedules and wage scales had been changed by petitioner without notification to or consultation with the union.

It is our opinion that the determination of the Board that petitioner had failed to give to the union all the recognition that the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., required it to give, is not unsupported by substantial evidence. It may, of course, be true—as petitioner earnestly contends—that the only matters which the union at any time desired to have reduced to writing were its demands for a "closed shop" and a "check off", which demands petitioner had consistently refused to accede to. The evidence, however, did not conclusively show this to be the fact, and the Board was not compelled to find that it was a fact. Accepting as true the evidence upon which the Board relied, it is difficult to escape the conclusion that such recognition as was given to the union was grudgingly given, and that there was a lack of such co-operation between the management of petitioner and the representative of its employees in collective bargaining as would be unlikely to avoid future labor difficulties. It is true that petitioner did not completely fail to recognize the union, and that it negotiated with the union; but we think that recognition and negotiation are not ends in themselves, but merely the means to an end, and we do not believe that negotiations which are carried on without any intention of reaching a definite agreement or of reducing to writing any agreement that may be reached, constitute a full compliance with the act.

The petitioner relies heavily upon the language of Chief Justice Hughes in the case of National Labor Relations Board v. Jones & Laughlin Steel Corp., hereinbefore quoted, to the effect that the act does not compel agreements between employers and employees and does not compel any agreement whatever. That language, of course, sustains petitioner's contention that it could not be compelled to enter into any written agreement which incorporated provisions unacceptable to it; but the language does not sustain petitioner's contention that bare collective bargaining, without any willingness on its part to reduce understandings reached to writing, constitutes the kind of bargaining which the law requires. Obviously, the purpose of the act is to require collective bargaining to the end that contracts satisfactory to both employer and employees may be reached. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Sands Manufacturing Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682. The act does not specifically require that the results of collective bargaining be reduced to writing, but a refusal to do what reasonable and fair-minded men are ordinarily willing to do, upon request, may certainly be taken to be an indication of a lack of proper intent and good faith in collective bargaining. Agreements can hardly be said to be satisfactory when the evidence of their existence must be made to depend upon the uncertain memories of the parties to them, who frequently, in such matters as are here involved, are partial and prejudiced. Furthermore, the representatives of employer and employees frequently change, and common sense would seem to dictate that whatever agreements are reached should, ordinarily, be reduced to writing.

Without attempting complete accuracy, we think that the applicable rules of law are, in substance, as follows: While the act does not compel that employer and employees shall agree, it contemplates that agreements will be reached as the result of collective bargaining. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126. It obligates the employer to bargain in good faith both collectively and exclusively with the chosen representative of a majority of his employees with respect to all matters which affect his employees as a class, including wages, hours of employment, and working conditions. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Union Pacific Stages, Inc., 9 Cir., 99 F.2d 153, 159, 164. It does not, however, prohibit individual employees or groups of employees from negotiating with the em-

ployer concerning grievances. National Labor Relations Board v. Union Pacific Stages, Inc., supra. The employer is not required to take the initiative in seeking a contract with his employees or with their chosen representative, nor is he required to enter into negotiations with third parties not representing his employees. National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 296, 297, 59 S.Ct. 501, 83 L.Ed. 660. When an employer has reached an agreement with his employees, he is under the further duty of bargaining collectively before making changes in existing contracts. National Labor Relations Board v. Sands Manufacturing Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682. The requirements which are imposed by the act upon the employer can only be satisfied by an honest and sincere compliance. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 358, 60 S.Ct. 569, 84 L.Ed. 799; National Labor Relations Board v. Griswold Mfg. Co., 3 Cir., 106 F.2d 713, 719, 720; National Labor Relations Board v. Express Pub. Co., 5 Cir., 111 F.2d 588, 589; National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 688; Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473, 480, 481; National Labor Relations Board v. Lightner Pub. Corp., 7 Cir., 113 F.2d 621, 624, 625. When collective bargaining results in agreement, a good-faith compliance with the law requires that the agreement be reduced to writing, unless both parties desire that it remain oral, or unless some other justifiable ground exists for not putting it in writing. Art Metal Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148, 150; National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 637; H. J. Heinz Co. v. National Labor Relations Board, 6 Cir., 110 F.2d 843, 848, 849, certiorari granted; Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473, 480, 481. Compare: Inland Steel Co. v. National Labor Relations Board, 7 Cir., 109 F.2d 9, 23; Fort Wayne Corrugated Paper Co. v. National Labor Relations Board, 7 Cir., 111 F.2d 869, 872.

Under the evidence which the Board accepted as true for the basis of its determination that the petitioner had not fully recognized, and had not in good faith dealt with, the union as the exclusive representative of all of petitioner's employees at its plant in Cedar Rapids, Iowa, we think that the order of the Board is valid.

The enforcement of the order is directed.