**AMERICAN NATIONAL INS. CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 13198.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1951.

Rehearing Denied April 2, 1951.

Louis J. Dibrell, Chas. G. Dibrell, Galveston, Tex., for petitioner.

Louis Libbin, Atty., A. Norman Somers, Asst. General Counsel, David P. Findling, Associate General Counsel, National Labor Relations Board, all of Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Proceeded against by the board, found guilty of violations [1] of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. and ordered: (1) to cease and desist from (a) refusing to bargain with the union by in effect insisting on the prerogative clause; and (b) from illegal interferences with its employees; and (2) upon request to bargain collectively with the union; respondent below has brought the matter to this court by petition for review, in which it seeks not to set aside the order as a whole but to modify or set it aside in part to the extent that its enforcement would outlaw, or prevent petitioner from stipulating for, the prerogative clause of the contract.

Alleging: that, on the 13th of January, 1950, after the examiner had filed his report on October 1, 1949, and before the board had, on April 5, 1950, filed its report, petitioner and the union, after completion of their bargaining negotiations, had entered into a written contract which is, and will, until July, 1951, be, in force; that in insisting upon the so-called prerogative clause with its provision against arbitration, it has not been guilty of unfair labor practices; that the net effect of the board's order is to deprive it, without due process of law, of rights guaranteed to it by law, including the right to refuse to agree to arbitration, by in effect requiring it, in any further contract negotiations, to abandon its prerogative clause and to agree to arbitration; petitioner prayed for such relief as the court might find it entitled to.

The board, in addition to answering, sought enforcement of its order, and the case is here for our appropriate action.

Neither in its petition nor in its brief does petitioner assail, or ask relief from, paragraph 1(b) of the board's order. Its whole complaint is directed, its whole effort at relief is confined, to setting aside, as unfounded in law, paragraph 1(a) of the order and the board's finding and conclusion that petitioner had, and has, no right to insist upon the prerogative clause [2] of the contract, on the ground that on the record viewed as a whole the board's finding and conclusion on which this order rests is not supported by substantial evidence, and is

1. Specifically (a) of refusing to bargain collectively by insisting upon the so-called prerogative clause of the contract; and (b) of interfering with its employees in their right of self-organization by discouraging membership in a union, and bargaining collectively through a representative of their own choosing.

2. "Functions and Prerogatives of Management. Nothing in this agreement shall be deemed to limit or restrict the Company in any way in the exercise of the customary functions of management, including the right to make such rules not inconsistent with the terms of this agreement relating to its operation as it shall deem advisable, and the right to hire, suspend, discharge, or otherwise discipline an employee for violation of such rules or for other proper and just cause.

"The right to select and hire, to discharge, or discipline for cause, and to maintain discipline and efficiency of employees, and to determine the schedules of work is recognized by both Union and Company as the proper responsibility and prerogative of management, to be held and exercised by the Company in a fair and just manner, and while it is agreed that an employee, feeling himself to have been aggrieved by any decision of the Company in respect to such matters, or the Union, in his behalf, shall have the right to have such decision reviewed by top management officials of the company under the grievance machinery hereinafter set forth, it is further agreed that the final decision of the Company made by such top management officials shall not be further reviewable by arbitration."

not a lawful order, and that it may not be enforced but must be set aside and vacated.

It insists: that the purpose and effect of this paragraph of the board's order is to discredit and cast doubt upon the contract petitioner now has with the union; and that, if this court orders its enforcement, the net and inescapable effect will be to prevent petitioner from seeking in the renewal of its contract with the union to retain the same, or similar provisions as to company prerogatives and arbitration as that on which the union and the company have already agreed.

It urges upon us, therefore: that the examiner was right in concluding that petitioner had a right to insist upon the inclusion of the clause in the contract;[3] that the board was wrong in its contrary conclusion that the respondent, by insisting on the so-called prerogative clause as a condition of agreement, failed to perform its statutory obligation to bargain; and that the enforcement of this paragraph 1(a) should be denied as unfounded in law and in fact.

We agree with the petitioner: that the provisions of the contract assailed by the board are not illegal or in anywise forbidden or prohibited; that petitioner had a right to urge and insist upon them; and that the evidence, viewed as a whole, does not, except as manifested by the unilateral action of petitioner during the time when negotiations were going on, in making changes and raising wages without consulting or notifying the union, show any refusal of the petitioner to engage in collective bargaining, as that term is defined in the act and in the decisions of the courts.

Because, however, of these unilateral acts, done while the bargaining was going on, and not because of any support in the evidence for the view that the employer, in insisting on the inclusion of the prerogative clause, was any less in good faith than the union was in resisting its inclusion,[4] the affirmative clause 2(a) requiring the employer to bargain will be enforced.

While, as the event showed, the union and the petitioner were able to at last agree on a prerogative clause in some-

3. "There is no doubt that respondent here had a right to insist upon the inclusion of the 'prerogative clause' in any contract. I find, contrary to the contention of the General Counsel and the Union, that clause does not fail to accord to the Union the status secured to it by certification. Respondent had a right to insist that its decisions in regard to hire and tenure of employment be not reviewable by arbitration. It had a right to refuse to agree to an increase in wages, to the designation of additional paid holidays, or to the granting of other conditions of employment more favorable than those then existing. Assuming, but of course not deciding, that respondent's employees were ill-paid and that respondent could well afford to grant a wage increase, it was under no legal compulsion to do so. True, the Act recognizes (Section 1) that inequality of bargaining power existing between unorganized employees and organized employers burdens commerce but in ameliorating this condition the Act protects employees in their right to self-organization only. Economic strength is still the underlying touchstone of success at the bargaining table.

It is argued further, however, that the intransigeance of respondent is, in itself, evidence of bad faith—that respondent by its refusal to grant more than minor or meaningless concessions had demonstrated that it did not approach the bargaining table with an open mind—that its conduct has not been that of one seeking agreement. But 'open mind' need not mean a mind without conviction nor need it mean a mind easily swayed by argument."

4. Though the witness Stafford did testify that the prerogative clause the employer wanted came as a complete surprise to the union and that if inserted it would take all of the union's rights away, and that in the face of the company's insistence that they must have such a clause, they made repeated efforts to bypass it, he does testify positively (p. 48 appendix to respondent's brief):

"He (Mr. Dibrell) wanted to know if I thought he was bargaining in good faith. I couldn't say he hadn't bargained in good faith—we had just started, *that we never could agree to the prerogative clause even if he gave us five hundred dollars a month increase in there.* * * *"

what modified terms, the union continued throughout to be as vigorously opposed to any clause of that kind as the employer was in favor of it. It was not, therefore, as the board finds, the steadfastness of the employer alone, in insisting on its point. It was the steadfastness of employer and union,[5] the one in proposing, the other in opposing, a clause of this kind, which the employer felt it ought, and the union felt it ought not, to have, which prolonged the negotiations. It was not any general unwillingness on the part of the petitioner to negotiate a contract satisfactory to itself as well as the union.

Before the enactment of the National Labor Relations Act, as amended, there was, despite the decisions of the courts to the contrary,[6] some understandable confusion as to what "collective bargaining" required of employers. This was due to the persistence of the board in asserting and pressing its view that the use in the National Labor Relations Act of the words "collective bargaining" meant that the employer had to agree to terms proposed by the union, if in the opinion of the board these terms were reasonable, and that a failure to agree to such terms was a basis for a finding that the employer was not bargaining in good faith. Since, however, that term has been defined in the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(d),[7] there is no longer any basis for differences of opinion as to what it means or for board orders in effect requiring the employer to contract in a certain way.

Of the opinion that in the quotation from the examiner's report, set out in note 3

above, the law is correctly stated, and that, in insisting on the prerogative clause, the company was not guilty of refusing to bargain, we order enforcement as to Paragraphs 1(b) and 2(a) and deny it as to Paragraph 1(a).

5. N.L.R.B. v. Whittier Mills Co., 5 Cir., 123 F.2d 725; N.L.R.B. v. Athens Mfg. Co., 5 Cir., 161 F.2d 8; N.L.R.B. v. Algoma Plywood & Veneer Co., 7 Cir., 121 F.2d 602, 603; Farmers Grain Co. v. Toledo, P. & W. R. R., 7 Cir., 158 F.2d 109; N.L.R.B. v. Corsicana Cotton Mills, 5 Cir., 178 F.2d 344.

6. Terminal Ry. Ass'n v. Brotherhood of Railroad Trainmen, 318 U.S. 1, at page 6, 63 S.Ct. 420, at page 423, 87 L.Ed. 571; N.L.R.B. v. Bell Oil & Gas Co., 5 Cir., 91 F.2d 509; N.L.R.B. v. P. Lorillard Co., 6 Cir., 117 F.2d 921.

7. "(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. * * * "