**MAJURE et al. v. NATIONAL LABOR RELATIONS BOARD.**

No. 13762.

United States Court of Appeals
Fifth Circuit.

July 18, 1952.

---

E. L. Snow, J. A. Covington, Jr., Meridian, Miss., for petitioner.

John F. Preston, Jr., A. Norman Somers, Asst. Gen. Counsel, D. P. Findling, Associate Gen. Counsel, Washington, D. C., National Labor Relations Board.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

1. 95 N. L. R. B. No. 43.

RUSSELL, Circuit Judge.

L. L. Majure and Mrs. Jo M. Majure, trading as Majure Transport Company, which will be referred to herein as the company, or employer, petition this Court to review and set aside an order of the National Labor Relations Board, which found that the company had committed an unfair labor practice by refusing to bargain in good faith with the duly certified representative of its employees; that a strike called by the union was caused by this refusal to bargain; that accordingly the company's refusal to reinstate two of the strikers was likewise a violation of the Act; and that the employer had, by a threatening remark, interfered with the rights of its employees in violation of Section 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1).[1] In response to the petition, the Board asserts the validity of its order and seeks enforcement of it.

The first, and controlling, question is whether the Board's finding that the employer refused to comply with the obligation to bargain in good faith is, upon consideration of the whole record, supported by substantial evidence. We have determined that it is.

In a consent election, the truck drivers employed by the Company voted in favor of the union[2] and it was, on April 22nd, 1949, certified as the exclusive representative of these employees for the purpose of collective bargaining. Thereafter, the union representatives submitted to the employer a proposed contract and requested a bargaining conference. The first conference was held on May 4th, 1949. Prior thereto, the union had submitted to the employer a proposed contract which embodied each provision usually desired by the union in its contract. At the meeting of May 4th, the company submitted its counter-proposal which contained respectively proposed, paragraph by paragraph, substitutions for the union's proposal. Thereby, except for an acknowledgment of the union as the sole bargaining agent, the employer reserved to its unilateral determination all significant features of the employ-

2. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 591, A. F. of L.

ment relationship. Thus, at the outset, each party contended for the acceptance by the other of an agreement wholly and entirely favorable to its position. There is dispute in the testimony as to what occurred at the first meeting, but it is clear that no progress was made toward agreement. The posititon of the employee's bargaining agent was that a contract of the kind proposed by the employer could not be accepted because it, in effect, gave the employees' representative no participation in, or right of bargaining about, any of the fundamental matters of rates of pay, hours of work, and other conditions of employment. The employer, on the other hand, contended that it could not, and would not, accept the union's proposals since these imposed conditions were not appropriate to its business operations. It is a fair inference from the testimony that the union acknowledged that it did not expect to secure acceptance of all of the terms of its proposal. On its part, however, the company's counsel stated that it did not want to "deal on that kind of basis" and thought the parties should state what they wanted and expected to stand by. In this situation, the conference was concluded, with the employer expressing willingness to further meet and confer at any time desired by the union. Thereafter, on May 27th, 1949, the local union representative, and a representative of the union's international organization for that area, sought, and obtained, another meeting with the company. At this conference, the international representative again stated that the union proposal was put forth merely as a basis for negotiation. This attitude was again criticized by the employer in a vein similar to that theretofore expressed. The union rep-

resentatives, laying aside the discussion of their proposal, attempted to negotiate "upwards" from the provisions of the counterproposal of the employer. These were discussed, paragraph by paragraph. The company indicated no willingness to modify any of its terms. The union representatives, stating that further negotiations appeared futile in view of the insistence of the company upon reservation of unilateral action as to the fixing of wages, hours, and working conditions, as contained in its proposal, brought the meeting to a close and left, with an invitation from the employer to return at any time they desired to do so. On June 16th, 1949, the union called a strike of the company's employees. The strike was a failure. Only three of the employees left work. These formed a picket line, but it was disregarded by the 12 others of the company's employees,[3] and the picket line was later called off. The propriety of the strike is challenged by the petitioners, who rely upon a paper signed by the twelve employees who refused to strike, in which they signified their unwillingness to remain in the union and follow its representation. However, the employer does not challenge, and in fact concedes, the representation of the union as the bargaining agent of its employees. Thereafter, on July 25th, 1949, the union filed with the Board a charge alleging that from, and since, May 4th, 1949, the employer "has refused, and is refusing, to bargain collectively with the representatives of his employees." On August 1st, 1949, the union representatives met with the employer and his counsel for a meeting of some 30 or 40 minutes. No details of the proposed contract were discussed, but the union representatives asked again whether the company was then will-

3. Mr. Majure was the president of the Dixie Highway Express, also operating from Meridian, and which was at that time, along with other highway transport companies in that city, negotiating a contract with the same union representatives. The three pickets at the Majure business, petitioners here, were removed to the Dixie Highway Express premises to establish a picket line there, and then, upon the settlement of the strike there, induced by the execution of the contract desired by the union, re-

turned to the Majure premises and then once again removed to the Dixie Highway Express premises to re-establish a picket line. This later was enjoined by the State Chancery Court and thereafter the strike at Majure, as well as Dixie Highway Express, was abandoned. Petitioners strenuously urge that the conduct of the Union was illegal and pleads it in justification of their position in the entire controversy, but we do not find these matters of controlling import here.

ing to modify its proposals in any way, and the company replied that it was not. There is testimony that the company contended "there was no place for a contract at Majure" because the men worked on commission and had "no right to be in the union." The union representatives, stating that since further negotiations appeared useless, and as the union was unable to enforce its demands, the matter would have to await further developments, and that the union preferred no contract at all to the acceptance of the company's proposal.

Some of the facts recited above can be established only by accepting testimony contradicted by that on behalf of the employer, as the trial examiner and the Board did. We do not find present in the testimony, or the circumstances of the case, any sufficient reason which impels us to disregard the acceptance of credibility of the witnesses stated by, and evidenced in the findings of, the trial examiner and the Board.[4]

One of the points of insistence by the union in the negotiations was the fixing of a rate of pay of 25% commission, instead of the prevailing 18% rate. This latter had recently been reduced from the former compensation of 20%. Another point insisted upon was the fixing of an allowance of vacation periods with pay. Both of these claims had been rejected by the employer on the ground that business conditions would not permit the payment of 25% commission, as provided in the contract, or even the restoration of the former 20%, which the union indicated a willingness to accept as a compromise of the wage demand. Following the breakdown of negotiations, on August 27th, 1949, the employer, after consultation with the Regional Director of the Board, and after notice to the union representative, from whom no reply was received, granted a wage increase to provide compensation of 20% commission and inaugurated a system of vacations with pay. In its findings, the Board absolved the employer from responsibility for unilateral changes of conditions of employment in these regards, but ad-

judged that this action of the employer, within a few weeks after the breakdown of bargaining negotiations and the acknowledgment by the union that it was unable to enforce its demands by a strike, was a circumstance substantiating the evidence of bad faith the Board found inherent in the prior conduct of the employer in the attempts to negotiate a collective agreement.

The Board found that the submission of the counter-proposal was, though not *per se* violative of the Act, nevertheless evidence of bad faith, and that the "stigma of bad faith" could have been removed by engagement in the "give and take" of collective bargaining. Further, that the "insistence by the Respondent [employer] on the terms of its counter-proposal was tantamount to a demand for complete unilateral control over all important terms and conditions of employment" and "a negation of the collective bargaining principle envisaged by the Act and is in effect a flat refusal to recognize a union's right to negotiate on behalf of its members as guaranteed it by the Act." The Board further thought that this finding of bad faith was supported by the action of the employer in raising the rate of compensation and granting vacations with pay, which it had theretofore refused to consider, so soon after it became apparent that the union was unable to bring strike pressure to bear upon the employer. It was not persuaded by the employer's contention that the wage increase was made possible by the incidence of additional business. As to the vacations with pay, it called attention to the fact that this matter was, in effect, included in the demands presented during the negotiations and thus could have properly been discussed by the employer at the time of the last conference on August 1st, while the evidence shows that the employer was even at that time considering the request of his employees that such vacations be granted.

We find, upon consideration of the whole record, that the Board's finding that the employer refused to comply with the obligation to bargain in good faith is supported by substantial evidence. We do not

4. N. L. R. B. v. Robbins Tire & Rubber Co., 5 Cir., 161 F.2d 798.

construe the Board's ruling to hold that the mere original submission of such a counter-proposal was sufficient to authorize a finding of bad faith. We place our acceptance of the Board's order upon a consideration of the entire circumstances of the case, which we have above outlined.

It is not contended on behalf of the employer that it at any time ever wavered in any degree with reference to any condition of employment from its original demand that it retain the power of unilateral control of each and every feature of the rates of pay, hours of work, and all conditions of employment. The employer contends that the record shows that the union representatives never made any specific proposal lowering their original demands and that, therefore, it was excused from modifying any of its proposals. However, it was made clear that the union demands were subject to bargaining. At the same time, the employer was rejecting all suggestions of change which would in any way modify its expressed reservation of unilateral action. It is true, of course, that the employer was not required to accept the union's proposal, nor to make any concession, or counter-proposal. However, the employer was required to bargain in good faith. This Court held in American National Insurance Co. v. N. L. R. B., 187 F.2d 307, affirmed by the Supreme Court in N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, that the obligation of the employer to bargain in good faith does not require the yielding of positions fairly maintained, nor permit the Board, under the guise of a finding of bad faith, to require the employer to contract in a way which the Board might deem proper. Nevertheless, the requirement of good faith in such bargaining is imposed by the statute. The dividing line between the right to the exercise of good faith and independent judgment and to maintain the resultant position with firmness, with no obligation of retreat, and nevertheless obey the statutory command to bargain in good faith must, in the nature of such right, and yet obligation, be frequently difficult of ascertainment and establishment. It has not been easy in the present case. In such cases there is danger that the negotiating parties may have their freedom of contract as to substance restricted or destroyed by a construction of their conduct as an evidence of bad faith. However, judicial ingenuity has devised but one standard, or test, which, recognizing the problem, yet seeks to insure reconciliation of privilege and obligation. This rule requires fair appraisal of the circumstances and the particular facts of the particular case. N. L. R. B. v. American National Insurance Company, supra.

Applying the rule here, we think the circumstances of this case support the Board's finding that the employer, while freely conferring, did not approach the bargaining table with an open mind and purpose to reach an agreement consistent with the respective rights of the parties.

The record presents a proper basis for the Board's finding that the strike ordered on June 16th, was caused by the refusal to bargain in good faith. The employees who participated in the strike were unfair labor practice strikers. No sufficient cause appears to bar them from their right of reinstatement upon their unconditional application therefor.

The finding that the employer's statement to the employee Burt evidenced a threat of economic reprisal in the event of union organization is supported by the evidence, which consists of the employee's testimony of the statement and the denial thereof by the employer. We do not overturn the acceptance by the trial examiner and the Board of the credibility of the employee rather than that of the employer.

The petition for review and vacation of the order of the Board is denied. The prayer for its enforcement is granted.