## NATIONAL LABOR RELATIONS BOARD
### v.
### I. B. S. MFG. CO. et al.
#### No. 14545.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

Rehearing Denied March 26, 1954.

A. Norman Somers, Asst. Gen. Counsel, N. L. R. B., David P. Findling, Asso.

Gen. Counsel, N. L. R. B., Frederick U. Reel, Atty., N. L. R. B., George J. Bott, General Counsel, N. L. R. B., Louis Schwartz, Washington, D. C., for petitioner.

Leslie Darden, New Albany, Miss., Alexander E. Wilson, Jr., Atlanta, Ga., G. Maynard Smith (of Wilson, Branch & Smith), Atlanta, Ga., Fred B. Smith, Ripley, Miss., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

This is not the usual proceeding for enforcement of an order of the Labor Board in which examiner and board, two souls with but a single thought, two hearts that beat as one, in agreement upon findings of fact and conclusions of law, present a united front against a respondent who has been found guilty of unfair labor practices and ordered to cease and desist and take affirmative action accordingly.

On the contrary, it is one in which the examiner, in his comprehensive, indeed exhaustive, 80 page intermediate report, finds that the general counsel has not borne his burden of establishing that the respondents have engaged in unfair labor practices, within the meaning of Sec. 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1, 5), as charged, to-wit: that it (1) had unlawfully refused to bargain in good faith; and (2) had interfered with and threatened its employees; and recommends that the complaint be dismissed in its entirety.

As might be expected then, the respondents, except as to subordinate points, on which they differ with the examiner, are here putting the examiner forward as a most wise and upright judge, indeed as a Daniel come to judgment, while casting the board in the role of a darkener of counsel when, declaring that it affirms the examiner's findings of fact, it rejects his conclusion and recommendation that no case was made out and that the complaint should be dismissed.

The board, in its turn, vigorously supporting the position it takes, that wherever examiner and board differ, the examiner is wrong, the board right, insists that the fact findings of the examiner do not support his conclusions.

The respondents as vigorously insist that it is not the examiner but the board which is wrong.

Matters standing thus, it is evident that a brief statement of the issues joined and the facts found and an equally brief statement of the principles which control the decision of this case are in order.

These proceedings began with a charge filed May 12, 1949, charging respondents with the commission of unfair labor practices in violation of Sec. 8(a) (1) and (3) of the Act, in this that they have discriminatorily discharged some thirty named employees. This was followed by an amended charge filed August 5, 1949, charging violations of Sec. 8(a), subsections (1), (3) and (5) of the Act, in this that they have discriminatorily discharged the same thirty employees and two others, and have failed to bargain collectively, beginning October 4, 1946, and thereafter to date. A second amended charge filed Feb. 1, 1950, repeated the same charges, and a third amendment filed Oct. 30, 1950, repeated the same charges as violations of Sec. 8(a) (1) and (5), and dropped the reference to subsection (3).

The general counsel, completely rejecting the 8(a) (1) and (3) charges, dealing with the discharge of employees, on October 31, 1950 filed a complaint in which he adopted the 8(a) (5) charge, the refusal to bargain, and, in addition, alleged that the respondents' acts in this respect constituted unfair labor practices affecting commerce, within the meaning of Sec. 8(a) (1) and (5). Nowhere in the charges or in the complaint was there any charge as to interrogation and coercion of its employees in respect of conversations between Winkler and Her-

rin and between Megginson and Caldwell. They were, however, dealt with by the examiner, who rejected them as unfair labor practices, and by the board, who found them to be such.

Among the matters alleged in the complaint, as constituting a breach of respondents' refusal to bargain, was that respondents unilaterally changed the working conditions of employees without consulting or conferring with the union.

The respondents moved to strike all references to matters occurring prior to Feb. 5, 1949, on the ground that Sec. 10 (b) of the Act specifically prohibited the issuance of a complaint based upon any unfair labor practices occurring more than six months prior to the date of the filing of the amended charge on August 5, 1949, on which the complaint was based, and in which the charge under Section 8(a) (5) was first made.

The cause referred to the examiner and respondents' motion to strike denied, there was a full hearing on all the matters in issue. In the course of it the examiner agreed with the general counsel and disagreed with the respondents, that the cut off date for the six months' period back of which no matters could be charged as unfair labor practices was not August 5, but May 9, 1949. He also agreed with the general counsel that evidence of events antedating the six months' period could properly be offered and considered as background evidence in determining whether respondents had violated the act. He, therefore, permitted a full hearing on all matters occurring after the election in 1946, at which the union was selected as bargaining agent.

When it came to his findings, however, though he found that the evidence would support a finding of refusal to bargain on the part of respondents during the six bargaining conferences which preceded the seventh and last, held July 26, 1949, he found further: because no charge was made until May 12, 1949, that, on the basis of events occurring within six months prior or subsequent thereto, no such finding would be justified; and that this was particularly so as to what transpired at the last conference on July 26, 1949, when it was not the action of respondents but that of the union in refusing to continue them which brought the negotiations to an end.

With respect to the charge that respondents instituted unilateral changes in production requirements in January, 1949, though he considered this action within the limitation period, respondents to the contrary notwithstanding, the examiner found that, under all the circumstances, this was not really an unfair labor practice and that in any event it would not effectuate the purposes of the act to base a finding of refusal to bargain on this action of the company.

As to the conversations between Megginson and Caldwell and Winkler and Herrin, which, though not set out in either charge or complaint, the examiner considered, and the board relied on, as an unfair labor practice, the examiner found that neither of these constituted interference or coercion or were otherwise in violation of the act.

The board, in its opinion,[1] agreeing with the examiner's rulings as to the six months' limitation period and claiming to agree with its findings of fact but disagreeing with his conclusions that respondents' actions at the July conference would not support a finding or refusal to bargain, specifically found that they did, basing this finding in part on respondents' demand that the union furnish a bond which the board found was an improper condition and in part upon the background evidence.

As to the charge that respondents had instituted unilateral changes in conditions of employment, the board found that this, considered in connection with the background evidence, constituted a refusal to bargain, while, as to the con-

versations just above referred to, the board found them interfering, coercive, and otherwise violative of the act.

Standing on its opinion and supporting it by brief and argument, the board is here insisting that in making these findings and conclusions, it is right, while respondents as vigorously insist that the board is wrong, the examiner right.

We take up these contentions in their order, to say that we agree with the respondents and disagree with examiner and board, that in respect to the charge of refusal to bargain, in violation of 8(a)(5), first made in August, 1949, the cut off date was not May 9, but August 5, 1949.

■ This is so because that was the first date on which a charge of refusal to bargain was made, and, under settled principles governing the construction of statutes of limitation,[2] Sec. 10(b) of the act, providing that no complaint shall issue based on any unfair labor practice which occurred more than six months prior to the filing of the charge with the board and the service of a copy thereof, fixes this as the cut off date.

None of the cases cited by the board, particularly none of those decided by this court, are in any manner contrary to this view. It is one thing to hold, as we have done, that it is admissible to add two or three names to the list of dischargees after the period, or to otherwise amplify and expand a charge by the addition of details in line with its general substance. It is quite another to hold that an entirely new and different cause of action based on matters occurring more than six months before the cut off date for the filing of the charge may be asserted.

While, therefore, we agree with the board rather than with the examiner that unilateral changes in production requirements constituted unfair labor practices in the nature of a refusal to bargain, we agree with respondents, that these acts occurring, as they did, more than six months before August 5, 1949, may not be made the basis of a finding of unfair labor practice, and with the examiner, though not for the reasons that he gave, that these matters may not be made the basis of an unfair labor practice finding.

■ As to the conversation between Megginson and Caldwell and that between Winkler and Herrin, which are set out in the board's opinion and need not be repeated here, we not only agree with the respondents and the examiner that these do not represent unfair labor practices, but we are also of the opinion that since they were not alleged in charge or complaint either specifically or in general, they cannot be made the basis of unfair labor practice findings.

■ Finally, we agree with examiner and respondents that what occurred at the July, 1949, conference was not a failure on the part of respondents to bargain and that it will not support and cannot be made the basis of a finding that there was a refusal to bargain. This court, in Majure v. N. L. R. B., 5 Cir., 198 F.2d 735, well stated the rule applying in a case of this kind. Long before its opinion in the American National Insurance case (American National Ins. Co. v. N. L. R. B.), 5 Cir., 187 F.2d 307, affirmed 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027, this court had held without varying that the board could not compel employers and employees to agree to particular provisions in a contract. It emphatically, therefore, rejects the view put out by the board and apparently sustained by the court in Wilson & Co. v. N. L. R. B., 8 Cir., 115 F.2d 759,

---

2. An amendment introducing a new cause of action does not relate back to the commencement of the action with respect to limitations but is the equivalent of a new suit so that the statute of limitations continues to run until the time of the filing of the amendment, 54 C.J.S.,

Limitations of Actions § 281, page 335; U. S. v. Andrews, 302 U.S. 517, 58 S. Ct. 315, 82 L.Ed. 398; Joanna Cotton Mills Co. v. N. L. R. B., 4 Cir., 176 F. 2d 749; Superior Engraving Co. v. N. L. R. B., 7 Cir., 183 F.2d 783.

that a refusal to agree to what, in the opinion of the board, reasonable and fair minded men ought to be willing to do may be taken to be any indication of a lack of proper intent or of good faith in collective bargaining. It rejected this for the reason which it made plain in the American National Insurance case in this court and which the Supreme Court, in that case, made even more plain. This reason is that the recognition of such a rule would put the board in the position of devising contracts for, and forcing their acceptance upon, employers and employees in accordance with what the board deemed reasonable and fair.

It is one thing to say that the employer must make a reasonable effort in some direction to compose his differences with the union, if Section 8(a) (5) is to be read as imposing any substantial obligation at all, N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131, and it is entirely another to say that the board may determine what agreements employers ought to make and may then find that if they will not make them they are refusing to bargain in violation of the section. This ought not to be, it is not the law. American National Insurance Co., supra and Majure v. N. L. R. B., supra.

■ We are in complete agreement with the view of Judge Soper, dissenting in N. L. R. B. v. Tower Hosiery Mills, 4 Cir., 180 F.2d 701, 707, at page 706,[3] that it is not enough for a court to say, as the majority in effect said in that case, "we have not compelled, we will not compel, an employer to agree to a

particular provision of a contract." It is necessary that the courts make it clear that a finding of good faith in bargaining cannot be based upon whether a particular provision seems reasonable or unreasonable to the board, or whether the board thinks the provision should be agreed to. It must be based entirely upon a consideration of the negotiations as a whole and upon a judgment based not upon the proposal or rejection of a particular proposition but upon clear proof derived from evidence and not from suspicion and conjecture that the respondent had not intended to bargain and had not bargained in good faith, that is that the respondent had no wish for an agreement but rather a wish to the contrary, and had conducted itself so as to defeat rather than promote agreement.

Based upon these principles, we agree with the findings and conclusions of the examiner who heard the oral testimony of the witnesses to the occurrences at the last conference. We agree, too, with respondents that it is not possible for the board to affirm the examiner's findings in this respect without also affirming his conclusion that there was no failure to bargain. We, therefore, reject the board's statement in its opinion that it affirmed the examiner's findings but rejected his conclusion. Holding that the board improperly rejected his findings, depending as they did, upon the credibility of the witnesses, we sustain the examiner's findings and conclusion and reject those of the board. Enforcement of the order will be

Denied.

3. Judge Soper said in part:
"It seems equally clear that the employer had the right to insist upon penalties which would be imposed upon the union only if it would violate its contract. The parties met nineteen times for negotiations in an attempt to adjust their differences. They split in the end largely on the question of union liability for breach of contract, and it cannot justly be said that the employer refused to bargain because it would not recede from its position on this crucial point, to make

such a holding does not promote collective bargaining. On the contrary, it interferes with the freedom of the parties because it enables the Board, with the approval of the court, to put pressure on one of the negotiators to accept an agreement to which it objects. In the end the Board will be arbiter as to what terms the employer may reasonably insist upon and an approach to compulsory arbitration will have been made which the statute does not contemplate."

RIVES, Circuit Judge (concurring in part and dissenting in part).

While I differ with the majority and agree with the Board and with the examiner that evidence of the conversation between Megginson and Caldwell and that between Winkler and Herrin was relevant in support of the allegations of interference, restraint and coercion made in general terms in the complaint, I do not consider our difference on that score material because I concur with the majority that those conversations do not constitute unfair labor practices.

I concur in all of the other parts of the opinion except the part relating to the bargaining conference in July, 1949. I think that the Board correctly appraised respondents' conduct at that final conference as the last in a long series of bad faith negotiations. As I understand the Board's opinion, 96 N.L. R.B. 1263, especially the part relating to the July, 1949 conference, the Board gave no indication of an intention to arrogate to itself any authority to compel an agreement on any provision of a contract. Instead, it called attention to respondents' illegal insistence upon a performance bond,[1] to its refusal to furnish the financial information essential to further bargaining,[2] and to the background of six previous fruitless conferences.[3] Agreeing as I do with the Board's conclusion that Respondents' conduct at the July, 1949 conference constituted a violation of Section 8(a) (5), I respectfully dissent as to the part of the opinion dealing with that conference.

Rehearing denied: RIVES, Circuit Judge, dissenting.

1. "* * * the Respondents' insistence concerning the performance bond had been the source of the impasse at the June, 1948 conference and in the subsequent correspondence. At the July, 1949 conference, the Respondents refused to state that they were not still insisting on such a performance bond as a condition precedent to an agreement. Instead, by asserting that the cases holding such insistence to be unlawful were not controlling the Respondents clearly revealed that a performance bond was still a condition precedent to an agreement. By such insistence, we find that the Respondents violated Section 8(a) (5) and (1) of the Act."

The Board cites in support of that proposition the following: "See Tower Hosiery Mills, 81 N.L.R.B. 658, enforced 4 Cir., 180 F.2d 701, certiorari denied 340 U.S. 811, 71 S.Ct. 38, 95 L.Ed. 596. Cf. International Brotherhood of Teamsters, etc., (Conway's Express), 87 N.L.R.B. 972." See also, N. L. R. B. v. Taormina, 94 N.L.R.B. 884, enforced 5 Cir., 207 F.2d 251; cf. N. L. R. B. v. Dalton Telephone Co., 5 Cir., 187 F.2d 811, 812.

2. "* * * the Union clearly brought the wage issue into focus by its demand for an increase, and the Respondents' answer referred to their inability to pay such increase. The Union was therefore entitled to financial information upon which the Respondents based their position, in order intelligently to proceed with further bargaining on this issue. The Respondents' refusal to furnish this information so essential to further bargaining by the Union was per se violative of the Act."

Again, I think the Board's position is in accord with well settled law. N. L. R. B. v. Jacobs Mfg. Co., 2 Cir., 196 F.2d 680, 684; N. L. R. B. v. Yawman & Erbe Mfg. Co., 2 Cir., 187 F.2d 947, 948–949; N. L. R. B. v. J. H. Allison & Co., 6 Cir., 165 F.2d 766, 770, 3 A.L.R.2d 990; Aluminum Ore Co. v. N. L. R. B., 7 Cir., 131 F.2d 485, 487, 147 A.L.R. 1.

3. "The July, 1949 conference was not the first, but the seventh of a series of conferences extending over a period of over two and one-half years. During this period, as the Trial Examiner himself recognized, the Respondents had engaged in mere surface bargaining and had amply demonstrated their lack of good faith. Certainly at this seventh conference, the Union was entitled to specific answers from the Respondents as to the latter's position on bargaining issues."

I think that the Board properly considered the previous conferences as background evidence. F. T. C. v. Cement Institute, 333 U.S. 683, 705, 68 S.Ct. 793, 92 L.Ed. 1009. See also, N. L. R. B. v. Clausen, 3 Cir., 188 F.2d 439, 443; cf. Local 74, United Brotherhood of Carpenters & Joiners of America v. National Labor Relations Board, 341 U.S. 707, 713–714, 71 S.Ct. 966, 95 L.Ed. 1309.