**TEXAS FOUNDRIES, Inc.**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 14519.

United States Court of Appeals Fifth Circuit.

April 15, 1954.

Lee C. Shaw, John T. VanAken, Chicago, Ill., for petitioner.

George J. Bott, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, Owsley Vose, Harvey B. Diamond, Attys., N. L. R. B., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

Following the usual proceedings under Section 10 of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., the board found that the petitioner, during the course of extended negotiations, had failed to bargain in good faith with the union, in violation of Section 8(a) (5) and (1) of the Act. It further found that petitioner had violated Section 8(a) (3) and (1) of the Act by refusing to reinstate strikers upon their unconditional application for reemployment, and had engaged in acts of interference in violation of Section (8) (a) (1).

In July, 1949, after several unsuccessful attempts, the union succeeded in organizing the company's moulders and, after an election, was certified by the board as the exclusive representative of a craft unit of about sixty of petitioner's four hundred production and maintenance employees. The petitioner entered into bargaining negotiations with the union, and a one-year contract was executed, to expire November 11, 1950. During the effective period of the contract there were no strikes or work stoppages, and no grievance was filed that required negotiations between the company and the union. On August 12, 1950, pursuant to a clause in the contract, and at the request of the union's representative, the petitioner and the union met in conference to discuss an increase in wages. The meeting was recessed to allow the petitioner to make a survey of wages in the area, the union contending that the wage scales at the plant were lower than those prevailing in the industry, and that an increase should be granted. On September 9th, the union notified the company that it did not desire to continue the current contract after its expiration. Wage and contract negotiations were then merged, and the first meeting was held on September 28, 1950. Subsequent meetings were held on October 5 and 11, 1950, and January 5 and 17 and February 19, 1951.

In the initial meeting, the parties agreed to use the 1949 contract as the basis of the negotiations. The union requested eleven changes in the 1949 contract; and, during the following meeting of October 5th, the petitioner made five concessions and, in addition, offered an increase of 7½¢ in all hourly rates and in incentive base rates. The company explained that this wage offer was in lieu of all other items of cost proposed by the union. Upon a suggestion by the union representative, the company drew up a contract embodying

the 7½¢ wage increase. The membership of the union rejected the proposed contract, and on October 5th the president of petitioner announced that only non-unit employees would receive the wage increase. At the subsequent meetings in October and November, the union made further demands in addition to the 7½¢ increase previously offered.

On November 13, 1950, after consultation with the local committee for the union, the company stated that it would abide by the working conditions of the old contract, which had expired on November 11th, and informed the Union that, due to the impasse in negotiations, it would put into effect the 7½¢ wage increase for the unit employees, which it did. The board found that the company was justified in so doing. The next meeting was held on January 5, 1951, at which time the company stated that it was in a position to offer the union an additional five cents per hour on all hourly and incentive base rates. This offer was made on the basis of a two-year contract. The union rejected the proposal, and emphasized that it was primarily concerned with an improvement in working conditions rather than in direct wage increases. The company asserted its idea that the main issue to be decided before a contract could be signed was the question of a wage increase, and expressed surprise at the union's rejection of its offer.

After a discussion of the counter proposals by the union the latter stated that it would sign a contract if the company would pay time and one-half for Saturday work caused by furnace repairs or breakdowns. The company refused this proposal, but offered to sign a one-year contract with no wage reopener provision. No agreement was reached by the parties; and, thereafter, the company announced the grant of the five-cent increase to non-unit employees, and offered a like amount to unit employees conditioned upon acceptance that week. The union did not accept the contract offered,

and called a strike which began on January 9, 1951. Additional meetings were held on January 17th and February 19th, but no contract settlement was reached. Shortly after January 17th, the petitioner began hiring new employees, and by February 20th the plant was completely restaffed. The petitioner then advised the union that the latter was no longer the bargaining agent, as it had lost its majority status. On September 15, 1951, the union removed its picket line, and its representatives made an unconditional request for reinstatement of those strikers that had not returned to work. Since all of the striking employees had been replaced during the strike, the company declined to make immediate reinstatement, but offered to reemploy the strikers in the future as openings occurred.

The board adopted the findings of the examiner that the petitioner had met with the union whenever requested, conferred at length concerning the contract proposals, and made concessions during the negotiations. Nevertheless, the board concluded that the petitioner had not bargained in good faith, because certain factors found in the totality of its conduct indicated that the petitioner had approached the bargaining table with a fixed determination not to reach an agreement. The most important factor in the overall conduct of the petitioner, as found by the board, was its method of effectuating a policy of uniformity between the union and non-bargaining unit employees. While the board conceded that there was nothing intrinsically wrong with the adoption of such a policy, it concluded that it was not the policy itself, but the method utilized by petitioner to effectuate it, that was wrong.

It is well settled that an employer may take into consideration the effect that an agreement reached in the bargaining unit might have on employees outside the bargaining unit. The insistence by the company on a general

wage increase, instead of the fringe benefits requested by the union, does not show bad faith. Section 8(d) of the Act, as amended, provides that the obligation to bargain in good faith "does not compel either party to agree to a proposal or require the making of a concession". Furthermore, the failure of an employer to agree to terms deemed reasonable by the board is not a proper basis for finding that an employer has been guilty of bargaining in bad faith. The rule relative to good-faith bargaining is well stated in N. L. R. B. v. Mayer, 5 Cir., 196 F.2d 286, 290, as follows: "It is true that the parties were unable to reach an agreement, but that of itself does not constitute a refusal to bargain. Not capitulation, but *bona fide* effort, is the criterion."

Since we are of the opinion that the strike was not precipitated by unfair labor practices, the company was justified in advising the union that it had lost its majority status during the strike. There is nothing in the entire course of proceedings to indicate bad faith on the part of the petitioner. Petitioner insisted upon a provision in the contract, which it had every right to do; made concessions in response to union requests; gave wage increases; and determined that it could give an additional wage increase instead of the fringe benefits requested by the union. The substantial evidence in the record as a whole does not support the board's finding that petitioner failed to bargain with the union in good faith, and we think the order of the board should be set aside. Accordingly, the petition to review is granted, the petition to enforce denied, and the order of the board is set aside. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; American National Ins. Co. v. N. L. R. B., 5 Cir., 187 F.2d 307, affirmed 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027; N. L. R. B. v. Landis Tool Co., 3 Cir., 193 F.2d 279; N. L. R. B. v. I. B. S. Manufacturing Co., 5 Cir., 210 F.2d 634.