**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**Marion G. DENTON and Valedia W. Denton, d/b/a Marden Manufacturing
Company, Respondents.**

No. 14938.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1954.

Wm. M. Pate, Atty., N. L. R. B., Atlanta, Ga., Marcel Mallet-Prevost, Asst. Gen. Counsel, A. Norman Somers and David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, Samuel M. Singer and H. T. Herrick, Attys., N. L. R. B., Washington, D. C., for petitioner.

Burr Tracy Ansell, Washington, D. C., A. R. Surles, Jr., H. P. Trawick, Jr., Lakeland, Fla., for respondents.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The Board petitions for enforcement of its order issued against respondents on October 29, 1953, based on findings (1) that respondents have restrained and coerced their employees in the exercise of their right to engage in union activity in violation of Section 8(a) (1) of the Act; (2) have discharged certain employees or refused to reinstate them because of their union activity, in violation of Sections 8(a) (3) and (1); and (3) have refused to bargain collectively in good faith with the union, in violation of Sections 8(a) (5) and (1) of the Act. 29 U.S.C.A. § 158(a) (1) et seq. The Board's decision and order are reported at 106 N.L.R.B. 247.

Respondent Company is engaged in the manufacture and sale of brush and weed cutting machinery at Auburndale, Florida. In a Board conducted election involving the Company's production and maintenance employees, held on May 5, 1952, the charging union prevailed,[1] and was duly certified on May 13 as the accredited bargaining representative of the employees. There is testimony credited both by the Trial Examiner and the Board that for about one month prior to the election the Company, principally through its supervisor, Brewster, and owner, Marion Denton, sought to hinder the union's organizational campaign by interrogation and intimidation of its pro-union employees. Specifically, Brewster told employee Purvis "that if we went on and tried to get the Union in—it was going to shut every one of our jobs down", and he later promised employees Carroll and Letchworth that if the union "didn't come in * * * he would give us all piecework back and we would make more money." About three weeks before the election, Brewster promised a higher paid piecework job to an hourly paid employee, Granger, if he would "pull out of the Union", and urged employee H. D. Lassiter to renounce the union.

In addition to the above recited testimony as to specific threats and promises to employees by Brewster made to forestall the advent of the union in the plant, there is further credited testimony as to respondent Marion Denton's active participation in the pre-election anti-union campaign. When employee H. D. Lassiter openly advocated unionization in his presence, Denton remarked that he had fired Brewster's predecessor, Clark, "on account of the Union", and further intimated that the union might adversely affect H. D. Lassiter and his two sons, Walter and David, both of whom were then employed by respondents. Denton's threat was subsequently reiterated by Brewster, who told H. D. Lassiter in effect that if Denton "shut the shop up" because of the union, Lassiter and his sons would all lose their jobs. Three days before the election the employees were assembled in the plant machine shop at Denton's instance, where he told them that he was disregarding his lawyer's advice in stating "he would never sign

1. The union here involved is United Steel Workers of America, CIO.

a contract with any union";[2] that the employees could gain nothing by paying union dues; that employees of a nearby plant had been discharged for union activity, and had failed in their efforts to be reinstated; that neither the union nor the Government could put the employees "back to work or pay * * * for the time * * * lost"; that "maybe the scale of hours would be cut if the Union got in"; that they could join the union and he would not discharge any of them for doing so, but "he had run his business his way and the Union or nobody else was not going to tell him how to run his own business."

With reference to the findings as to respondents' discriminatory discharge of employees Walter Lassiter and Calvin Singleton, the credited testimony broadly reveals that both these employees had performed their duties with apparent satisfaction and without reprimand until they became actively affiliated and identified with the union's organizational campaign, after which they fell into disrepute with both Denton and Brewster and were discharged. While admittedly there is testimony tending to support respondents' contention that these two employees were justifiably discharged, on recommendation of Brewster and Keefer, for non-productiveness and lack of work, other testimony and inferences support the finding of both the Trial Examiner and the Board that their discharges were discriminatorily motivated.[3]

The testimony relied upon to support the finding of H. D. Lassiter's discriminatory discharge fairly reveals that, although this employee openly revealed his pro-union sympathy to Denton during the union campaign and was impliedly threatened with discharge therefor, he had already subjected himself to justifiable discharge under other Board findings for excessive absenteeism and drinking on the job during this period.[4] Relying, however, upon an alleged inconsistency between respondents' contention that H. D. Lassiter was discharged "for drinking on the job" and Denton's testimony "that Lassiter was discharged for absenteeism", and on other employee testimony found to support the inference that drinking on the job was "a plant practice which, strange as it may seem, had been tolerated by the Respondents for a number of years", the Board concluded that his admitted absenteeism and drinking "were not the motivating causes for Lassiter's discharge", but that he was actually terminated pursuant to prior threats for his union advocacy.

With reference to the 8(a)(5) refusal to bargain violation, the Board mainly adopted findings by the Trial Examiner that the Company, through its attorney, Surles, and plant manager, Keefer, met with the principal union negotiators,

**2.** Denton's disclaimer of any intention of ever reaching an agreement with the union was reiterated to a number of respondents' employees both by Denton and plant manager, Keefer, before and after the union's election victory on May 5th.

**3.** For example, although the Company showed that Walter Lassiter had been absent from work for several weeks in 1952 because of a hernia operation, there is other testimony that such absences, occurring prior to Lassiter's adherence to the union, were with the Company's consent and approval; that Denton even advanced him money to pay his hospital bills on that occasion and Brewster warned him to "take it easy" upon his return to the shop so as to avoid re-injury. There is further credited testimony rebutting the Company's proof that Singleton was justifiably discharged because his temporary steel stacking job had been completed, it being shown that, prior to his active advocacy of the union, he was a regular employee, like Walter Lassiter, doing satisfactory work without warning or threat of impending discharge.

**4.** The Board found that, "Lassiter, as well as practically all the other employees and their foreman had been in the habit of drinking beer during working hours. In May 1952, Lassiter was found to have been drinking on the job, and was warned about such conduct. The record also shows that Lassiter was absent 47 days in 1951, and 28 days in 1952, including 4 days of unexplained absence during the week in which he was discharged."

Riffe and Gravatt, on May 27, June 4, and June 25, 1952, and that at these bargaining conferences a number of proposed contractual provisions were discussed, including grievance procedure, union liability, a probationary period for new employees, etc. Though the Company made certain nominal and illusory "concessions" during these conferences with regard to the grant of plant bulletin board space to the union, recognition of the appropriate bargaining unit, overtime pay, and assumption of responsibility for maintaining plant health and safety conditions,[5] it refused to grant any wage increase or make any other financial concessions to the union,[6] and also refused to accede to union demands on other bargaining issues of grievance procedure, union security, dues check-off, and paid vacations and holidays.

■ The Trial Examiner and Board, apparently acknowledging the rule adhered to by this Court in American National Insurance Co. v. N. L. R. B., 187 F. 2d 307, affirmed 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027, and most recently restated in N. L. R. B. v. National Paper Co., 5 Cir., 216 F.2d 859, holding that the Act does not require an employer to capitulate to union demands on any bargaining issue or to make any particular concession, nevertheless held that the Company's failure to yield in any respect was "a material factor" in determining whether it had actually complied with its statutory obligation to bargain in good faith. Considering the Company's attitude throughout the bargaining period against the background of the other violations found, and particularly in the light of prior statements by Denton and his supervisors both before and after the election that he "would never sign a contract with any union", we think substantial evidence supports the Board's finding that the Company had throughout engaged only in "surface negotiations", and that its mere "willingness to talk" was insufficient to comply with the good faith bargaining requirement of Section 8(a) (5).[7] See N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131, 134–135; N. L. R. B. v. Athens Mfg. Co., 5 Cir., 161 F.2d 8.

■■ We think the Board's findings and order as to the 8(a) (1) violations based on the above recited and other testimony of coercive interrogation and intimidation of Company employees for union activity by Denton and his supervisors, Brewster and Keefer, as well as the 8(a) (3) and (1) violations resulting from the discriminatory discharge of Walter Lassiter and Calvin Singleton, are clearly entitled to enforcement as supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. We think, however, that the Trial Examiner and Board, in finding discriminatory motivation in the discharge of H. D. Lassiter, have inadvertently attached undue em-

5. These so-called "concessions" were characterized as more or less nominal and illusory, principally because practically all of them were independently required either by Federal or Florida state law. See N. L. R. B. v. Inter-City Advertising Co., 4 Cir., 190 F.2d 420, 421, certiorari denied 342 U.S. 908, 72 S.Ct. 301, 96 L. Ed. 679; Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201 et seq.; Title 49 Fla.Stat.Ann. § 440.56(1).

6. The credited testimony reveals that when union negotiator, Riffe, requested permission to have the Company's books inspected to determine whether it was financially able to grant a wage increase, Attorney Surles refused, stating "that Denton was able to give an increase but that he was not willing to do so * * * because of the world situation * * * with everything so uncertain."

7. The undisputed testimony supports the Trial Examiner's further finding, impliedly approved by the Board, of independent violations of Section 8(a) (5), inherent in Denton's adamant refusal to permit the union's own international representatives to participate in any grievance procedure, and its exclusion of H. D. Lassiter from bargaining sessions after his discharge solely on the ground that he was no longer an employee of the Company. See N. L. R. B. v. Deena Artware, Inc., 6 Cir., 198 F.2d 645, 651, certiorari denied 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342.

phasis to the testimony as to his conceded pro-union status, while minimizing other substantial evidence of his admitted derelictions and breaches of plant discipline after warning, so that upon this record we cannot reject respondents' emphatic assertion that, as a key plant employee, his "4 days of unexplained absence during the week in which he was discharged", as well as his beer drinking on the job after warning,[8] actually prompted his discharge for justifiable cause under the Act. Certainly, we cannot say, viewing the record as a whole, that the burden of proof that his discharge was discriminatorily motivated has been met, or that the Board's finding of unlawful motivation and its order of reinstatement in H. D. Lassiter's behalf is supported by substantial evidence. We further doubt whether the testimony viewed in its entirety fairly supports any finding or inference that respondents had effectively condoned H. D. Lassiter's absenteeism and on the job drinking with knowledge of any "plant practice" in the latter regard. Assuming, however, that the Trial Examiner and Board correctly held respondents had waived H. D. Lassiter's derelictions in this respect before knowledge of his active union advocacy, respondents, nevertheless, did not forfeit or waive their right under the Act to discharge him for such undesirable practices in the future, nor were they required to continue excusing his absenteeism and drinking in order to avoid violation of Section 8(a) (3) of the Act. This Court has consistently recognized that neither passive union membership nor active union leadership, as such, is a guarantee against discharge for justifiable cause under the Act. N. L. R. B. v. Fulton Bag and Cotton Mills, 5 Cir., 175 F.2d 675, 677; N. L. R. B. v. Williamson-Dickie Mfg. Co., 5 Cir., 130 F.2d 260, 265; see also N. L. R. B. v. Century Cement Mfg. Co., 2 Cir., 208 F.2d 84, 86. We conclude, therefore, that the Board's order of reinstatement and its back pay award to H. D. Lassiter is unjustified and may not be enforced.

 Finally, we agree with the Trial Examiner and the Board that the strike of July 1, 1952 was an unfair labor practice strike resulting mainly from respondents' refusal to bargain in good faith[9] and its discriminatory discharge of Walter Lassiter and Calvin Singleton, rather than an economic strike resulting from Denton's refusal to grant a wage increase or make any other particular concession not required under Section 8(d) of the Act. See 29 U.S.C.A. § 158(d); Majure v. N. L. R. B., 5 Cir., 198 F.2d 735, 739; American Newspaper Publishers Ass'n v. National Labor Relations Board (N. L. R. B. v. International Typographical Union), 7 Cir., 193 F.2d 782, 804, certiorari denied 344 U.S. 816, 73 S.Ct. 11, 97 L.Ed. 635; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 478, 479. Cf. N. L. R. B. v. National Paper Co., supra; N. L. R. B. v. Barrett Co., 7 Cir., 135 F.2d 959, 961–962. It follows that the striking employees were properly held entitled to reinstatement as of July 9, 1952, the date of their unconditional application,[10] and that the Company's refusal to grant them re-employment was in violation of Sections

8. We reject the Board's finding that "while (H. D.) Lassiter was warned against drinking on the job shortly before his discharge there is no evidence that he was thereafter guilty of such misconduct", as incorrect in view of Lassiter's own testimony that he drank beer on the job "from the day I went there until the day I was discharged."

9. Respondents have filed a motion under Section 10(e) of the Act, 29 U.S.C.A. § 160(e), to remand this case to the Board in order that it may adduce additional evidence to show that the union itself rendered the requirement of good faith bargaining impossible of compliance, but we think the Board correctly argues that respondent's motion must be denied. See, e.g., N. L. R. B. v. Pool Mfg. Co., 339 U. S. 577, 579, 581–582, 70 S.Ct. 830, 94 L. Ed. 1077; N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067.

10. Like the Trial Examiner and the Board, we reject Denton's contention that he understood the "committee" of three employees (W.W. Singleton, T.E. Singleton

8(a) (3) and (1) of the Act. Majure v. N. L. R. B., supra.

Section 2(a) of the Board's order will be modified so as to exclude the reinstatement and back pay award to H. D. Lassiter, and as thus modified, the order is hereby

Enforced.

and John H. Smith) who requested unconditional reinstatement on July 9 were speaking only for themselves, rather than for all the striking employees, as they testified Denton was informed. Since this was a conflicting factual issue which appears to have been properly resolved by the Board upon substantial evidence, we decline to disturb the Board's finding in favor of reinstatement for all striking employees here. See N. L. R. B. v. Pittsburgh Steamship Co., 337 U.S. 656, 659–660, 69 S.Ct. 1283, 93 L.Ed. 1602; Olin Industries, Inc., v. N. L. R. B., 5 Cir., 192 F.2d 799.