**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALAMO EXPRESS, INC. and Alamo Cartage Company, Respondents.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALAMO EXPRESS, INC. and Alamo Cartage Company, Respondents.**

**Nos. 17594, 21456.**

United States Court of Appeals Fifth Circuit.

Dec. 17, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Dominick L. Manoli, Assoc. Gen. Counsel, NLRB, Frank H. Itkin, Atty., NLRB, Washington, D. C., for appellant.

Allen P. Schoolfield, Jr., Dallas, Tex., for respondents.

Before THORNBERRY and SIMPSON, Circuit Judges, and ATKINS, District Judge.

---

PER CURIAM:

 The National Labor Relations Board on December 12, 1968 filed a motion for issuance of a writ of body attachment against Henry D. Walker for the failure and refusal of the Alamo Express, Inc. and Alamo Cartage Company to comply with the Decree of this Court entered herein on June 10, 1968. A Special Master was appointed to hear evidence and make findings as to whether the writ of attachment should issue. After exhaustive hearings, findings by the Special Master, the filing of exceptions to these findings, and the filing of briefs by the parties, the case comes to us. The report of the Special Master including recommended findings of fact and conclusions of law is appended hereto. The Master's findings of fact are binding on this Court unless clearly erroneous. Fed.R.Civ.P. Rule 53(e) (2); National Labor Relations Board v. Alamo Express, Inc. and Alamo Cartage Company, 5th Cir. 1968, 395 F.2d 481.

The findings and conclusions of the Master are affirmed in all respects. Petitioner's motion for writ of body attachment is denied. All costs, fees and expenses are assessed against the Board.

## APPENDIX

### REPORT OF SPECIAL MASTER INCLUDING RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW
### UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

Nos. 17,594 and 21,456

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

ALAMO EXPRESS, INC., AND
ALAMO CARTAGE COMPANY,

Respondents.

Filed: Jul. 3, 1969

*Preliminary Statement*

Following motion by the National Labor Relations Board to the United States Court of Appeals for the Fifth Circuit for an order providing for the issuance of a writ of body attachment against Henry D. Walker for the alleged failure of the Respondents to purge themselves of contempt, the Court, on February 20, 1969, issued its order appointing a Special Master to conduct pre-trial proceedings, to hold hearings, and to file with the Clerk of the Court the transcript of the proceedings and of the evidence and the original exhibits, together with the Master's report thereon and his recommendations as to findings of fact and recommendations as to conclusions of law.

Pursuant to the Court's order, an informal pre-trial conference was held in Washington, D. C., and a hearing was convened in Houston, Texas, on May 1, 1969. Each party was afforded full opportunity to be heard, to examine and cross-examine witnesses, to submit evidence, and to file proposed findings of

fact and conclusions of law and briefs. Petitioner presented five witnesses and twelve exhibits. Respondents presented no witnesses and one exhibit. The Special Master has considered all briefs, and, upon the whole record and upon his observation of the witnesses, he makes the following report.

*Recommended Findings of Fact*

1. On June 22, 1959, the Court entered its decree herein enforcing an order of the Board, issued on October 18, 1957, against the Respondents (hereinafter referred to as the Company), their officers, agents, successors, and assigns. In pertinent part, the order of the Board, reported at 119 N.L.R.B. 6, as enforced by the Court's decree, directed the Company:

To cease and desist from:

(a) Discouraging membership in General Drivers, Warehousemen & Helpers, Local 968, AFL-CIO, or any other labor organization, by * * * discriminating in regard to their employees' hire or tenure of employment or any term or condition of employment;

* * * * * *

(h) In any other manner interfering with, restraining, or coercing their employees in the exercise of the right to self-organization, to form labor organizations, to join or assist General Drivers, Warehousemen & Helpers, Local 968, AFL-CIO, or any other labor organization, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities.

2. On July 10, 1964, the Court entered its decree herein enforcing an order of the Board, issued on January 30, 1964, against the Company, its officers, agents, successors, and assigns. The provisions of this order have not been made a part of the record in this proceeding before the Special Master, and this order is stated by Petitioner to be unreported.

3. On June 10, 1968, the Court entered a decree adjudicating the Company in civil contempt for violating the Court's decrees of June 22, 1959, and July 10, 1964, by offering employees economic benefits in return for voting against union representation and by discharging an employee for testifying against the Company in a proceeding under the National Labor Relations Act. The Court's order directs the Company, *inter alia*, to purge itself of contempt by ceasing and desisting from the violations found and from "violating in any other manner this Court's decrees of June 22, 1959 and of July 10, 1964".

4. At all material times, each of the following persons held the office or position listed opposite his name and was and is a supervisory official or employee of the Company:

H. D. Walker Vice-President
L. W. Stephens Vice-President
Jackie Burrows Assistant Terminal
 Manager-Dispatcher,
 Houston, Texas.

5. James W. Deason was employed by Alamo Express, Inc., as a "line driver". As such, he was engaged in driving trucks carrying freight between various cities. He worked in this capacity until the beginning of a strike of some employees on May 24, 1968. It is contended by Petitioner that the Company has discriminated against this employee by failing to grant vacation pay to him during the year 1968. This appears to be the only discrimination claimed by Petitioner to be in violation of the Court's decree of June 10, 1968, which, by reference in paragraph 1(c), prohibits violation of the Court's decrees of June 22, 1959, and of July 10, 1964.

6. The Company's policy and practice, both past and present, as regards vacation pay, is as follows:

(a) To be eligible for a vacation, a line driver must have been employed by the Company for at least one year. No

vacation benefits were initially awarded under any circumstances prior to such time as the employee involved had served at least one full year of employment. Each year following the first year is also, like the first, a qualifying year for vacation purposes with the sole difference that after the first year, when it is convenient for both the Company and the employee involved, the employee may take his vacation prior to such time as he qualifies for it, that is, prior to his anniversary date.

(b) With respect to line drivers, the Company policy and practice has always been to make no payment of vacation pay prior to such time as the employee involved returns from his vacation. The Company policy and practice has also been that drivers who work through their vacations or fail to take their vacations when scheduled do not receive vacation benefits in the form of additional money.

(c) Similarly, the Company policy and practice has been not to pay vacation money to an employee who is discharged or who quits or is terminated for any other reason subsequent to the completion of his qualifying year if he has not at that time taken his vacation.

(d) For convenience to the Company in scheduling its overall work force and for convenience to the employees, the Company has permitted employees to take their vacation prior to the completion of their qualifying year, but only where there is no reason to believe that the employee might not return to active employment. Normally, an employee is not paid his vacation pay prior to his return to actual service, although one instance has been shown in this record in which a line driver who did not return to work was eventually paid. In this instance the line driver ended his vacation after the strike had started.

7. James W. Deason began work for the Company July 10, 1964, as a line driver. He took vacations in August 1965, August 1966, and June 1967, following the procedures described above as to vacation dates and payments. Similarly, Mr. Burrows approved a June 1, 1968, vacation date for Mr. Deason in 1968. Mr. Deason, a member of the Teamsters union that went on strike May 24, 1968, joined the other strikers and did not report for work after the strike began. This strike was still in progress at the time of the hearing, May 1, 1969.

8. Shortly after the strike began, Mr. Deason brought some trip logs to the Company office, and told Mr. Burrows that he did not intend to abandon the strike. About 3 days after the start of the strike, Mr. Deason telephoned Vice-President H. D. Walker and asked Mr. Walker whether the Company intended to pay him, Deason, his vacation pay. Mr. Walker, of course, was aware of the strike, nevertheless he responded that Mr. Deason would have to come to work until the starting date of his vacation. Mr. Deason replied that he would not abandon the strike.

9. On or about the first week in June 1968, Mr. Deason was in the Company office and asked Mr. Walker if his vacation check had arrived. Mr. Walker said it had not. On August 26, 1968, the Board wrote to the Company, demanding payment of Mr. Deason's vacation money within 10 days. Despite the aforesaid demands and the Board's filing of the motion herein alleging that the continued withholding of Mr. Deason's vacation pay had violated the foregoing orders and decrees of the Court, the Company has refused and continues to refuse and has failed and continues to fail to pay Mr. Deason the vacation pay for his 1968 vacation.

### The Issue

The issue as determined by the motion, answer, and contentions of the parties appears to be whether or not the Company's refusal to grant Mr. Deason vacation pay constituted a discrimination against him.

### Recommended Conclusions of Law and Discussion

A discrimination against an employee regarding vacation pay would be a dis-

crimination regarding his term or condition of employment. A discrimination of this kind would be in violation of the decrees and order of this Court and would constitute civil contempt of this Court's previous order and decrees.

Although the Company had not reduced to writing its policy and practice with regard to vacation pay, it seems clear from the evidence that under its policy and practice, as shown by the record in this case this employee was not entitled to vacation pay during the summer of 1968. Mr. Deason would not have qualified for vacation pay under the Company's policy and practice until his July 10, 1968, anniversary date, but because of the Company's additional policy and practice of attempting to accommodate the employees' convenience with its own, it had agreed to permit Mr. Deason to start his vacation on June 1, 1968. However, since he was not on duty immediately prior to June 1, 1968, and since there was some reason to believe that he might not return to work, I cannot conclude that he was eligible for vacation pay for his scheduled vacation period. The policy and practice of Alamo Express, Inc., and Alamo Cartage Company differ in a major respect from that of the employer in NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). In that case the employer's policy provided for the payment of accrued earned vacation pay to one group of employees while announcing the extinction of the same benefits to another group of employees who were not on duty and who were not on duty because of a strike. In this case, the Company's policy and practice do not provide for vacation pay for any period short of a full year's employment. There is no evidence to indicate that Mr. Deason was denied vacation pay for any reason except that he was not eligible under the terms of the Company's vacation pay policy and practice.

The Company's policy and practice with regard to vacation pay appear to be lawful and nondiscriminatory.

It is concluded that the Company's refusal to pay James W. Deason vacation benefits in 1968 was not a violation of any order or decree of this Court.

*Recommendation*

It is recommended that the Petitioner's motion for writ of body attachment be denied.

Since the preparation of this report, a letter was received on June 26, 1969, requesting that an attached reply brief for Respondents be accepted. Since request was not timely made for permission to file reply brief and since no provision was made for such filing, this reply brief has not been considered by the Special Master but will be included with the other papers forwarded herewith.

(Signed) EDWARD CREEL
Edward Creel,
Special Master.

June 27, 1969.