NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

KNUTH BROTHERS, INC., Respondent.

No. 77–1738.

United States Court of Appeals, Seventh Circuit.

Heard Feb. 24, 1978.

Decided Sept. 1, 1978 *.

* This opinion was originally a Circuit Rule 35 order as of September 1, 1978 and distributed as an opinion on September 25, 1978.

David F. Zorensky, Atty., N. L. R. B., Washington, D. C., for petitioner.

Jonathan T. Swain, Milwaukee, Wis., for respondent.

Before CUMMINGS and BAUER, Circuit Judges, and MARSHALL, District Judge.**

CUMMINGS, Circuit Judge.

The National Labor Relations Board has applied for enforcement of an order requiring Knuth Brothers, Inc. ("Company") to pay striking employees vacation benefits for part of the year ending March 1, 1975. The Board's Decision and Order of June 3, 1977, are reported at 299 NLRB No. 176.

In April 1975, the Milwaukee Printing Pressmen and Assistants' Union No. 7 filed a charge against the Company alleging that it had discriminated against its striking employees by refusing to pay them vacation benefits because they engaged in an active strike. The Company was said to have violated Sections 8(a)(1) and (3) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(1) and (3)). . Thereafter, the Board's General Counsel issued a complaint against the Company stating that the Union had been certified as an exclusive collective bargaining representative of certain employees of the Company and that some of those employees engaged in a strike in October 1974. According to the Complaint, since January 1975 the Union requested the Company to pay 21 named employees[1] vacation benefits accrued from March 1, 1974, to October 14, 1974, when the strike commenced. The Company was said to have discriminatorily refused this request since February 10, 1975, in violation of Sections 8(a)(1) and (3) of the Act.

The Board found that the Union was the certified collective bargaining representative of pressmen and production employees

---

** District Judge Prentice H. Marshall of the Northern District of Illinois is sitting by designation.

1. One of these 21 employees, Phil Popovich, was later dropped from the proceedings because his name was not contained in the stipulated list of strikers (see App. 2, 10).

of the Company. In October 1974, 20 of its 50 employees struck in support of the Union contract demands. All the strikers were replaced by March 1, 1975. The strike terminated effective June 27, 1975. The Board also found that the Company relied on its established vacation policy to justify its conduct in refusing to extend any vacation benefits to the strikers pursuant to the Union's January or February 1975 request to give them vacation pay "earned during 1974 up to the time they had walked out" (App. 35).

The Board next found that under the Company's vacation policy, its employees received vacation benefits computed as follows: "during the first year vacation credit is 'accumulated on the basis of one day for every 10 weeks of work, not to exceed five days vacation'; in the 2d, 6th, and 15th years the length of the vacation increases respectively to 2, 3, and 4 weeks. However, an employee must be on the 'active payroll' on March 1 to be entitled to any vacation benefits for the previous 12 months." (App. 35; footnote omitted.) Those employees on approved leave on March 1 are eligible for vacation benefits earned during the previous year when they return to work. The parties stipulated that the Company does not pay pro rata vacation benefits to employees discharged or otherwise terminated before the March 1 "accrual date." It was also stipulated that under the vacation policy, employees terminated before March 1 of any given year are ineligible for vacation benefits for the previous 12-month period.

The Board held that the Company had not violated Section 8(a)(3) of the Act[2] because the replaced strikers were treated in the same manner as other employees terminated prior to March 1 of any vacation year and because there was no "specific evidence of an intent to discriminate against them because of their engaging in a strike" (App. 37). However, the Board held that the Company had violated Section 8(a)(1) of the Act,[3] because the Company's vacation policy provides that an employee who engages in a lawful strike loses his accumulated vacation pay if the Company chooses to replace him before March 1. This was described by the Board majority as "a clear threat of economic loss to employees for engaging in protected concerted activities" (App. 37). The Board concluded that the strikers were denied vacation benefits since they were not on the active payroll on March 1, 1975, thereby "losing economic benefits as a consequence of their engaging in activity protected by the statute" in violation of Section 8(a)(1) (App. 38). Consequently, the Board ordered the Company to pay withheld accrued vacation benefits to 18 of its employees who were on strike on March 1, 1975.[4] Under the Board's appropriate reading of its order, the replaced strikers are entitled only to receive benefits computed on the basis of the time they had worked before going on strike.[5] Board member Walther dissented because there was no evidence of anti-union motivation and the Company had "applied its vacation accrual policy in a non-discriminatory

---

**2.** Section 8(a)(3) provides in pertinent part:
"It shall be an unfair labor practice for an employer—
\* \* \* \* \* \*
(3) by discrimination in regard to hire ·or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization \* \* \*." (29 U.S.C. § 158(a)(3))

**3.** Section 8(a)(1) of the Act provides:
"It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of the Act" (29 U.S.C. § 158(a)(1)).

In turn, Section 7 confers upon employees the right "to engage in \* \* \* concerted activities," including lawful strikes (29 U.S.C. § 157).

**4.** Only 18 of the Company's 20 strikers were included in the Board's remedial order because employees Don Weber and Bernice Butz voluntarily quit their employment in December 1974, thus not losing their vacation benefits as a consequence of their having been engaged in the strike.

**5.** The Board's order also contains customary cease and desist and posting provisions.

manner" (App. 44). Enforcement of the Board's order will be granted.

■ Section 7 of the National Labor Relations Act guarantees the right of employees to strike for their mutual aid and protection, and Section 8(a)(1) protects that right by making it unlawful for an employer to restrain or coerce employees in the exercise of that right. See Note 3 *supra*. These provisions are violated if an employer unjustifiedly denies accrued vacation benefits to striking employees. *National Labor Relations Board v. Great Dane Trailers*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027.

The Company seeks to avoid the *Great Dane Trailers* rule by urging that both Sections 8(a)(3) and (1) were implicated there whereas this case concerns only a Section 8(a)(1) transgression. However, subsequent cases with which we agree have established that the Board may require an employer to pay withheld vacation benefits to strikers based on a violation of Section 8(a)(1) alone, apparently reasoning that employer conduct having the effect of disrupting Section 7 rights should not be permitted without a substantial business justification. Thus in *National Labor Relations Board v. Jemco, Inc.*, 465 F.2d 1148 (6th Cir. 1972), certiorari denied, 409 U.S. 1109, 93 S.Ct. 911, 34 L.Ed.2d 690, the court determined that affirmative relief such as afforded here was justified by employer conduct that was merely coercive or restraining under Section 8(a)(1). 465 F.2d at 1152 n. 7. To the same effect, see *Tex Tan Welhausen Co. v. National Labor Relations Board*, 419 F.2d 1265, 1271 (5th Cir. 1969), vacated on other grounds, 397 U.S. 819, 90 S.Ct. 1516, 25 L.Ed.2d 805, modified on other grounds, 434

F.2d 405 (5th Cir. 1970), certiorari denied, 402 U.S. 973, 91 S.Ct. 1663, 29 L.Ed.2d 138; *Allied Industrial Workers, AFL–CIO, Local Union No. 289 v. National Labor Relations Board*, 155 U.S.App.D.C. 112, 122 n. 18, 476 F.2d 868, 878 n. 18 (1973).

■ Here the employees accumulated the right to vacation benefits if they had worked at least ten weeks in each 12-month period ending March 1.[6] Actual presence at work on March 1 was not consistently required because employees who were on authorized leave received their benefits upon returning to work, and any distinction among employees based solely on presence at work during a strike ignores the fact that under the National Labor Relations Act a striking employee, even if replaced, retains employee status until he obtains other regular and substantially equivalent employment or affirmatively renounces such status. See *National Labor Relations Board v. Fleetwood Trailer Co.*, 389 U.S. 375, 381, 88 S.Ct. 543, 19 L.Ed.2d 614; *National Labor Relations Board v. Frick Company*, 397 F.2d 956 (3rd Cir. 1958); *National Labor Relations Board v. Duncan Foundry and Machine Works, Inc.*, 435 F.2d 612 (7th Cir. 1970). Nor could the Company validly discriminate against lawful strikers by applying its vacation policy only to employees "on the active payroll on March 1" (App. 4). *National Labor Relations Board v. Duncan Foundry and Machine Works, Inc.*, 435 F.2d 612, 618 (7th Cir. 1970). Member Walther's dissenting statement that it is "self-evident" that a properly promulgated vacation policy serves a substantial business purpose since otherwise it would not have been adopted is not only inconsistent with out

---

6. *National Labor Relations Board v. Alamo Express Inc.*, 420 F.2d 1216 (5th Cir. 1969); *Mooney Aircraft, Inc.*, 148 NLRB 1057 (1964), enforced 337 F.2d 605 (5th Cir. 1964), and *Glomac Plastics, Inc.*, 194 NLRB 406 (1971), on which the Company relies, are not in point because in each of those cases the vacation plan was not computed for any period short of a full year's employment. The cited cases therefore stand for the proposition that a company may be able to select a reasonable period on which to compute benefits (at least in the absence of a claim that the length of that period is so long that the

period itself discourages strike activity), but they do not support the proposition that once the benefit period has been satisfied benefits can be denied on the ground that they did not "accrue" as a result of a striker's failure to be present during a strike. To so read the cited cases would deny a striker the protection of *Great Dane* if a vacation plan happened to be worded so that whether the benefits "accrue" depends on whether the beneficiaries are on strike. Cf. *National Labor Relations Board v. Duncan Foundry, infra*.

opinion in *Duncan Foundry*, which requires employers to articulate a specific purpose to the court (435 F.2d at 619), but also proves too much because it would render *Great Dane's* inquiry into business justification surplusage. Certainly the conclusion of the majority of the Board, which has the "primary responsibility" of striking "the proper balance between the asserted business justification and the invasion of employee rights" (*National Labor Relations Board v. Fleetwood Trailer Co., Inc.*, 389 U.S. 375, 378, 88 S.Ct. 543, 546, 19 L.Ed.2d 614), should not be overturned by this Court on the basis of a business justification that must be guessed or assumed to be present.

While the Company conceded before the Board that any striker who had not been permanently replaced as of March 1 would have been entitled to "accrued vacation benefits," it attempted to justify its interference with its employees' right to strike by advancing a "legitimate and substantial business" justification as a defense under *Great Dane Trailers, supra*, 388 U.S. at 34, 87 S.Ct. 1792. Thus the Company claims that under the Board's order both the strikers and their replacements would accrue vacation benefits in the same vacation year, causing the Company's vacation liability for the 1974–1975 year to double (Br. 16). This overlooks the fact that under the Board's reading of its order (with which we agree), vacation benefits are awarded to strikers only on the basis of pre-strike time worked, so that no duplicative burden has been placed upon the employer.

Because the Company has violated Section 8(a)(1) and has not shown a business justification therefor, judgment will be entered enforcing the Board's order.